Filed 8/18/23  P. v. Hernandez CA4/2
Opinion on remand from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077943 |
| v. | (Super. Ct. No.  FSB053198) |
| BENJAMIN HERNANDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Bryan Foster, Judge.  Affirmed.

Savannah Montanez, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance from Plaintiff and Respondent.

I.

INTRODUCTION

Defendant and appellant Benjamin Hernandez (Benjamin)[1] appeals the trial court's order denying his petition to vacate his second degree murder conviction in which he aided and abetted one or more codefendants and for resentencing under Penal Code[2] section 1172.6 (formerly section 1170.95).[3] He argues the trial court erred in denying his petition without issuing an order to show cause and holding an evidentiary hearing because (1) the record of conviction does not conclusively show he is ineligible for relief as a matter of law; (2) the court engaged in impermissible factfinding; (3) the court incorrectly denied the petition by recalling the evidence presented at trial, rather than examining the record of conviction; (4) the court applied the wrong standard in denying the petition; and (5) the jury instructions given on aiding and abetting were ambiguous and allowed the jury to find him guilty of second degree murder without finding he personally harbored malice. Because defendant is ineligible for relief as a matter of law, we affirm the trial court's order denying his section 1172.6 petition.

---

[1]  To avoid confusion because of shared last names, we will refer to defendant Benjamin Hernandez, the victim Jerry Ramirez, and some witnesses by their first names. Because codefendants Edward Vincent Hernandez and Edward Hernandez, Sr., share both first and last names, we will refer to them as Vinny and Edward, respectively. Lastly, we will refer to codefendant Alfred Ray Rodriguez by his last name.

[2]  All future statutory references are to the Penal Code.

*[footnote continued on next page]*

II.

FACTUAL AND PROCEDURAL BACKGROUND[4]

A. *Factual Background*

Tina Lopez testified that she had spent the night of November 17, 2005, with Jerry Ramirez (Jerry), her boyfriend, at a motel. Tina telephoned her father, Benjamin, and asked for a ride. Edward Vincent Hernandez (Vinny) and Rodriguez, her cousins, picked her and Jerry up. No one seemed tense or angry.

The group went to the home of Tina's aunt, where Jerry's brother, Eric Ramirez, lived. Eric testified he had been keeping a .22-caliber semiautomatic and a .22-caliber revolver, as well as a .25-caliber clip, for Jerry. Eric retrieved the guns and gave them to Jerry; Jerry unloaded the guns and gave them and the clip to Vinny, who owned one of the guns. Tina's aunt testified that about a year earlier, there had been problems between Vinny and Jerry.

The group then proceeded to a house on East Pumalo Street (the Pumalo house) where other extended family members lived. Tina's mother, Stella Lopez; Tina's aunt and uncle, Ruth and Edward Hernandez, Sr. (Edward); and Benjamin were all at the Pumalo house. Tina bickered with Benjamin while Rodriguez, Vinny, and Jerry were

---

[3] Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We cite to section 1172.6 for ease of reference unless otherwise indicated.

[4] The factual background is taken from this court's prior nonpublished opinion in Benjamin's prior direct appeal, case No. E046636. (*People v. Rodriguez* (Sept. 28, 2010, E046636) [nonpub. opn.] (*Rodriguez*).)

3

outside.  Tina heard "loudness" in the backyard, and Benjamin went outside.  Benjamin told Tina to stay in the house and told Stella to keep her there.

Curtis Hawkins, who lived behind the Pumalo house, heard a commotion.  Through his bathroom window, he saw several men, including all four defendants, surrounding Jerry on the ground near the carport.  Jerry was trying to escape but the others were blocking him.  Hawkins heard Benjamin say, "You been fucking with my family.  I'm going to kill you."  Benjamin hit Jerry with a pointed-edge shovel about 20 times in the head and torso while Jerry cried and pleaded for him to stop.  Hawkins saw a pool of blood form around Jerry's head, and he heard Benjamin say, "Hurry up.  Get my gun."  Hawkins also heard someone say to get blankets.  Vinny and Rodriguez rolled Jerry's motionless body up in blankets.  Vinny backed a car up the driveway into the carport, and Vinny and Rodriguez loaded Jerry into the trunk and drove off.  Hawkins then saw Edward put some dirt over the blood and hose down the driveway and a car in the carport.  A few minutes later, Hawkins heard Benjamin say to his daughter and another woman, "The same thing may happen to you."  Hawkins did not contact the police because he feared for his own safety.

Another next-door neighbor, Vivian Jackson, heard screams.  Jackson looked through the chain-link fence to see Vinny[5] beat a man on the ground with a shovel at least five times, while three or four other men beat, stomped, and kicked the victim.  She could

_____

[5]  Although Jackson testified that the man with the shovel was Vinny, she had identified a photograph of Benjamin as the man who had used the shovel.

4

see blood on the ground. She heard the man she identified as Vinny say, "I told you not to play with me," and she heard the victim screaming "[N]o." Jackson then walked away. Fifteen or 20 minutes later, she saw Edward hosing down what looked like blood from the carport area.

Alberta Hechtl, a security guard at a credit union adjacent to the Pumalo house, heard yelling, and although her view was partially obstructed, she saw an object like a shovel being driven up and down while a man screamed. She heard a woman yelling "leave him alone," and a man reply, "Get in the house."

Tina told a detective and testified at the preliminary hearing that Benjamin came back inside and yelled to Vinny and Rodriguez to "[g]et him out of here" or to "[g]et rid of him." She then saw Vinny and Rodriguez push Jerry into the car, and she saw Vinny driving the car away.

Deputy Mark Addy of the San Bernardino County Sheriff's Department responded to a report of a domestic disturbance at the Pumalo house. He observed that Benjamin had what appeared to be fresh blood on his T-shirt and a fresh laceration above his eye. The deputy also saw someone washing a car in the carport.

Jerry's body was discovered in a ravine in Waterman Canyon on November 20, 2005. He had suffered numerous blunt and sharp force injuries, including defensive wounds on his arms, but the cause of death was seven close-range gunshot wounds to the head. Some of the blunt-force injuries on his back and buttocks area were consistent with

5

kicking. The seven bullets were all .25-caliber and could only have been fired from a .25-caliber weapon.

Neither a gun nor the shovel was ever found.

B. *Procedural Background*

The jury found Benjamin guilty of second degree murder as an aider and abettor.[6] (*Rodriguez*, *supra*, E046636; § 187, subd. (a).) The jury also found that Benjamin had used a deadly weapon, a shovel, in the commission of the crime. (§ 12022, subd. (b)(1).) The trial court sentenced Benjamin to 15 years to life in prison and imposed a consecutive one-year enhancement for the weapon use.

On September 28, 2010, this court rejected Benjamin's contention that the evidence was insufficient to show he aided and abetted a codefendant in killing the victim and affirmed the judgment. (See *Rodriguez*, *supra*, E046636.)

On January 7, 2019, Benjamin in pro. per. filed a petition to vacate his second degree murder conviction and for resentencing pursuant to section 1172.6.

---

[6] Codefendant Rodriguez was also found guilty of second degree murder as an aider and abettor. Benjamin and codefendants Rodriguez, Vinny, and Edward were all charged with first degree murder and conspiracy to commit murder with various weapon use allegations. Vinny's trial was severed from that of the others. The jury was unable to reach a verdict on the murder charge as to Edward and a mistrial was declared as to him. Vinny and Edward were subsequently tried together. Vinny was found guilty of first degree murder and conspiracy to commit murder (§§ 187, subd. (a), 182, subd. (a)(1)), and the jury found true firearm use allegations as to him under section 12022.53, subdivisions (b), (c), (d). The jury was again unable to reach a verdict as to the murder charge against Edward, and another mistrial was declared. Edward thereafter entered a plea of guilty to acting as an accessory to a felony (§ 32), and the murder charge against him was dismissed. (*Rodriguez*, *supra*, E046636.)

On April 19, 2019, the trial court granted the People's motion to strike the petition, finding Senate Bill No. 1437 unconstitutional. We reversed the trial court's order in a nonpublished opinion on June 10, 2020, and remanded the matter for further proceedings under section 1170.95. (See *People v. Hernandez* (June 10, 2020, E072594) [nonpub. opn.].)

Following remand, the People filed a written informal response and opposition to Benjamin's petition. In support, the People attached our nonpublished opinion from Benjamin's direct appeal, case No. E046636, and the information. The People also requested that the trial court take judicial notice of the decision and files and records in the underlying trial, including the abstract of judgment and the jury instructions and verdict forms.[7] Benjamin did not file a brief in response to the People's informal response and opposition.

On September 3, 2021, the trial court (the same court that heard the underlying trial) held a prima facie hearing on the petition. Benjamin was not present, but represented by appointed counsel (the same counsel that had represented Benjamin at trial) and waived Benjamin's presence. After recalling the facts of the case, the trial court denied the petition because Benjamin "made an insufficient prima facie showing" he is entitled to relief pursuant to section 1172.6 and issued a written order on September 30, 2021. In its written order, after reciting the factual background, in pertinent part, the

_____

[7] There is no indication in the record the trial court granted the People's motion to take judicial notice of the record of conviction.

court explained: "This Court finds substantial evidence was presented at trial that Benjamin Hernandez instigated the assault, was a major participant in the assault and acted with reckless indifference to human life, and aided and abetted in the murder of Jerry Ramirez." Benjamin timely appealed.

On January 18, 2022, Benjamin's prior appellate counsel filed a brief raising no arguable issues pursuant to *Anders v. California* (1967) 386 U.S. 738 and *People v. Wende* (1979) 25 Cal.3d 436. Benjamin did not file a supplemental brief. As Benjamin had failed to file a supplemental brief raising any issues for our review, we dismissed the appeal as abandoned without independently reviewing the record in a nonpublished opinion filed on March 15, 2022.

Benjamin's current appellate counsel was appointed on March 24, 2022. Current counsel thereafter filed a petition for review with the California Supreme Court. The Supreme Court granted Benjamin's petition for review and transferred the case back to us with directions to vacate our prior decision and reconsider the matter in light of *People v. Delgadillo* (2022) 14 Cal.5th 216. We vacated our decision and provided the parties an opportunity to file a supplemental brief. We granted Benjamin's current appellate counsel's unopposed motion to file a supplemental brief and to take judicial notice of the jury instruction from Benjamin's trial. Because current appointed counsel had determined appealable issues existed and had filed a supplemental brief arguing those issues, we vacated our order filed April 5, 2023, granting Benjamin permission to file a personal supplemental brief. The People did not file a brief in response.

8

III.

DISCUSSION

Benjamin contends the trial court erred in denying his petition at the prima facie stage by "recalling the evidence presented at trial and deciding substantial evidence supported [his] murder conviction," rather than examining the record of conviction to determine whether he was ineligible for relief. He further asserts that the court applied the wrong standard, i.e., substantial evidence, in denying his petition and inappropriately engaged in factfinding at the prima facie stage. Benjamin also argues (1) Senate Bill No. 775 applies retroactively; (2) even though the jury was not instructed on the felony murder or natural and probable consequences doctrines, he may nonetheless have been convicted on a theory under which malice was imputed to him based solely on his participation in a crime because the instructions given on aiding and abetting were ambiguous and allowed the jury to find him guilty of second degree murder without finding he personally harbored malice; and (3) he is entitled to an evidentiary hearing because the record of conviction does not conclusively show he is ineligible for relief as a matter of law.

A. *Legal Background*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying

felony who acted with reckless indifference to human life.'" (*People v. Gentile* (2020) 10 Cal.5th 830, 846-847 (*Gentile*); see Stats. 2018, ch. 1015, § 1, subd. (f).)  The Legislature accomplished this by amending sections 188 and 189.

Section 188, which defines malice, now provides in part:  "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.)

Section 189, subdivision (e), now limits the circumstances under which a person may be convicted of felony murder:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2."  (Stats. 2018, ch. 1015, § 3.)

Effective January 1, 2022, Senate Bill No. 775 expanded eligibility for relief to include individuals convicted of "attempted murder under the natural and probable consequences doctrine" or other theory under which malice is imputed to a person based solely on that person's participation in a crime.  (§ 1172.6, subd. (a), as amended by

Stats. 2021, ch. 551, § 2; Legis. Counsel's Dig., Sen. Bill No. 775 (2020-2021 Reg. Sess.).) Appellate courts have held the new amendments in Senate Bill No. 775 apply retroactively to appeals from the denial of petitions not yet final as of January 1, 2022. (*People v. Porter* (2022) 73 Cal.App.5th 644, 652 ["[T]he trial court's order denying the petition is not yet final and Senate Bill No. 775 has already taken effect. Therefore, the revisions set forth in Senate Bill No. 775 apply to the instant petition."]; *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006 ["New legislation generally applies to all judgments which are not final as of the effective date of the new statute."].) The amendments in Senate Bill No. 775 thus apply to Benjamin's appeal. (*People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1261.)

However, Senate Bill Nos. 1437 and 775 did not expand eligibility for relief pursuant to section 1172.6 to one who directly aids and abets another who commits murder or attempted murder. (*People v. Offley* (2020) 48 Cal.App.5th 588, 595-596.) Such persons who by act or advice aid, promote, encourage or instigate the commission of murder, with knowledge of the direct perpetrator's criminal purpose and with intent to commit, encourage, or facilitate the commission of murder, remain criminally liable for murder. (*Ibid.*)

Senate Bill No. 1437 also created a procedure for offenders previously convicted of felony murder or murder under the natural and probable consequences doctrine to seek retroactive relief if they could no longer be convicted of murder under the new law. (§ 1172.6, subd. (a); *Gentile*, *supra*, 10 Cal.5th at p. 843; *People v. Lewis* (2021) 11

11

Cal.5th 952, 959 (*Lewis*); *People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019 . . . .'" (*Strong*, *supra*, at p. 708, fn. omitted.) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Ibid.*)

Petitioners who request counsel "are entitled to the appointment of counsel upon the filing of a facially sufficient petition . . . ." (*Lewis*, *supra*, 11 Cal.5th at p. 957.) "[O]nly after the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.'" (*Ibid.*, italics omitted; see *id*. at p. 966.) The court's "prima facie inquiry . . . is limited. . . . '"[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" (*Id*. at p. 971.) A trial court's failure to follow the

procedures enacted in section 1172.6 is analyzed for prejudice under the state law standard of *People v. Watson* (1956) 46 Cal.2d 818, 836.  (*Lewis*, *supra*, at pp. 973-974.)  Under this standard, we ask whether it is reasonably probable defendant would have obtained a more favorable outcome if proper procedures had been followed.  (*Id.* at p. 974.)

If a petitioner has made a prima facie showing of entitlement to relief, "'the court shall issue an order to show cause.'"  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  Once the court determines that a defendant has made a prima facie showing, it "must [then] hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill [No.] 1437.  [Citation.]  'A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'  [Citation.]  'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.'"  (*Strong*, *supra*, at p. 709; accord, *Lewis*, *supra*, 11 Cal.5th at p. 960; § 1172.6, subd. (d)(3).)

In Senate Bill No. 775, the Legislature amended the language of section 1172.6, codifying *Lewis*, *supra*, 11 Cal.5th 952, expanding the scope of the petitioning process, and clarifying some of the procedural requirements. (Stats. 2021, ch. 551, § 2.)  Section 1172.6, subdivision (d)(3) now provides the admission of evidence at the hearing "shall

be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." The statute continues, "The court may also consider the procedural history of the case recited in any prior appellate opinion." Further, "The prosecutor and the petitioner also may offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).)

Whether a petitioner has made the requisite prima facie showing is a predominantly legal question. We thus review de novo whether the trial court properly denied Benjamin's petition without issuing an order to show cause. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

B. *Analysis*

Benjamin contends we must reverse the order denying his petition because the court did not examine the record of conviction but relied on its recollection of the facts, applied the wrong standard in denying his petition, and inappropriately engaged in factfinding at the prima facie stage. We reject these contentions. The specific evidence presented at trial regarding the facts and circumstances of the killing is immaterial to the analysis of whether Benjamin made a prima facie case for relief under section 1172.6. The jury instructions and verdict demonstrate Benjamin is ineligible for relief under

14

section 1172.6 as a matter of law because he was prosecuted as a direct aider and abettor to murder, and the jury found he intended to aid and abet a second degree murder. The jury was instructed on direct aiding and abetting via CALCRIM Nos. 400 and 401. Senate Bill No. 1437 did not eliminate direct aiding and abetting liability for murder or attempted murder. (*Gentile*, *supra*, 10 Cal.5th at p. 848; *People v. Cortes* (2022) 75 Cal.App.5th 198, 204-205 [petitioner convicted of murder and attempted murder either as perpetrator or direct aider and abettor ineligible for § 1172.6 relief].)

"[T]o be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of the *act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life." (*People v. Powell* (2021) 63 Cal.App.5th 689, 713; see also *People v. Reyes* (2023) 14 Cal.5th 981, 991.) Aiding and abetting implied malice murder is a theory of murder based on the aider and abettor's own mental state; it does not rely on imputed malice. (*People v. Silva* (2023) 87 Cal.App.5th 632, 639; *People v. Schell* (2022) 84 Cal.App.5th 437, 443-444; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 390-391.)

As given to Benjamin's jury, CALCRIM Nos. 400 and 401 stated that an aider and abettor's guilt is based on the direct perpetrator's acts and the aider and abettor's own acts and own mental state. (See generally *People v. McCoy* (2001) 25 Cal.4th 1111,

15

1117.)  CALCRIM No. 401 told the jury that to prove a defendant was guilty of a crime as an aider and abettor, the People had to prove (1) the perpetrator committed the crime; (2) the defendant knew that the perpetrator intended to commit the crime; (3) before or during the crime's commission, the defendant intended to aid and abet the perpetrator in committing the crime; and (4) the defendant's words or conduct in fact aided and abetted the perpetrator's commission of the crime.  The instruction further stated that the aider and abettor must know "of the perpetrator's unlawful purpose" and specifically intend to "aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."  (CALCRIM No. 401; see generally *People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

The jury therefore did not convict Benjamin under the natural and probable and consequences doctrine or other theory under which malice was merely imputed to him.  (Compare *People v. Whitson* (2022) 79 Cal.App.5th 22, 27, 33 [jury was instructed on natural and probable consequences theory of liability].)  He was instead convicted as a direct aider and abettor who had malice aforethought.  As such, he was ineligible for section 1172.6 relief.

Relying on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), Benjamin acknowledges the jury was not instructed on the felony murder rule or the natural and probable consequences doctrine, but claims the aiding and abetting instructions were ambiguous and allowed the jury to find him guilty of second degree murder without finding he personally harbored malice, i.e., by imputing malice to him.  He thus believes,

16

as in *Langi*, an evidentiary hearing is required here.

In *Langi*, the petitioner was convicted of second degree murder as one of four men who had beaten the victim to death. (*Langi*, *supra*, 73 Cal.App.5th at p. 975.) The trial court summarily denied Langi's petition for resentencing under former section 1170.95 at the prima facie stage. (*Langi*, *supra*, at p. 976.) The record did not conclusively establish, without factfinding, that Langi had thrown the fatal punch, and the jury instructions failed to explain that "to be guilty as a direct aider and abettor of second degree murder, an accomplice must have acted with the mental state of implied malice." (*Id.* at p. 983.)

The appellate court reversed the trial court's denial of Langi's petition, finding that the pattern instructions on aiding and abetting (CALJIC Nos. 8.31 & 3.01) "create[d] an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Langi*, *supra*, at 73 Cal.App.5th at p. 982.) The appellate court agreed with Langi, that the instructions permitted the jury to find him guilty of murder based on his codefendant's act regardless of his personal knowledge or disregard of danger to human life. (*Id.* at p. 981.) The court explained that "under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, [Langi] need only have intended to encourage the perpetrator's intentional act—in this case, punching [the victim]—whether or not [Langi] intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of

17

such a killing." (*Id*. at p. 983.)  In other words, the jury could have convicted Langi of murder as an aider and abettor without finding that he had personally acted with express or implied malice.  The court emphasized that the instructions "should have explained that, to be guilty as a direct aider and abettor of second degree murder, an accomplice must have acted with the mental state of implied malice." (*Ibid*.)  Because they did not, the record of conviction did not "conclusively negate" the possibility that Langi was convicted on an invalid theory, and an evidentiary hearing was required under section 1172.6.  (*Id*. at p. 984.)

*Langi* is distinguishable from the present matter.  In *Langi*, the victim fell and struck his head after someone in a group that included the defendant punched him, and the trial court concluded he was the actual killer based on language in the direct appellate opinion suggesting that the defendant threw the fatal punch.  (*Langi*, *supra*, 73 Cal.App.5th at p. 975.)  Here, Benjamin struck the victim up to 20 times in the head and torso with a metal shovel, verbalized his intent to kill the victim, and commanded others to get his gun and get rid of the victim.  Benjamin was convicted of murder based on directly aiding and abetting his cohorts and not based solely on his participation in the crime.  In other words, the jury could not have convicted Benjamin of murder as an aider and abettor without finding that he had personally acted with express or implied malice.

*Langi* is analogous only to the extent that Benjamin, like the defendant there, may have been convicted either as the actual killer or as an aider and abettor.  That fact alone does not entitle him to relief, however, as "Senate Bill 1437 does not eliminate direct

18

aiding and abetting liability for murder." (*Gentile*, *supra*, 10 Cal.5th at p. 848.) The jury here was instructed with CALCRIM No. 520, which explained express and implied malice aforethought, and CALCRIM No. 401, which, in part, instructed the jury that an aider and abettor had to know the unlawful purpose of the perpetrator and intended to aid and abet the perpetrator in committing the crime. The jury here could not have convicted Benjamin under an imputed aiding and abetting theory.

As to the aiding and abetting instructions, Benjamin apparently relies on the phrase "equally guilty" that was used in CALCRIM No. 400, as implicating imputed malice. The inclusion of this phrase, however, did not result in Benjamin being convicted based on imputed malice because the jury was also instructed with CALCRIM No. 401, that an aider and abettor had to know the unlawful purpose of the perpetrator, that the defendant intended to aid and abet the perpetrator, intended to encourage or facilitate the commission of the crime, and by act or advice, aided or encouraged the commission of the crime. By giving CALCRIM No. 401, the instructional language would have cleared up any ambiguity arguably presented by former CALCRIM No. 400's reference to principals being equally guilty. (*People v. Johnson* (2016) 62 Cal.4th 600, 641.)

Benjamin could be prosecuted for murder under the same direct aiding and abetting theory today. "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*Gentile*, *supra*, 10 Cal.5th at p. 848.) The amendments to sections 188

and 189 are not relevant to Benjamin's case.  Thus, he cannot show he "could not presently be convicted of murder . . . because of changes to [s]ection 188 or 189 made effective January 1, 2019," a statutorily mandated prerequisite for a section 1172.6 petition.  (§ 1172.6, subd. (a).)  He is ineligible for relief under section 1172.6 as a matter of law.

## IV.

## DISPOSITION

The order denying Benjamin's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.

20